**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1936**

JEFFREY O'NEAL; SHERRIE O'NEAL,

        Plaintiffs - Appellees,

     v.

G. RUSSELL ROLLYSON, JR., in his official and individual capacities,

        Defendant - Appellant,

     and

RICHARD WISEN,

        Defendant.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Irene C. Berger, District Judge.  (5:16-cv-08597)

Submitted:  April 24, 2018                  Decided:  April 26, 2018

Before KING and THACKER, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Charles R. Bailey, Michael W. Taylor, BAILEY & WYANT, PLLC, Charleston, West Virginia, for Appellant.  Gary M. Smith, Bren J. Pomponio, MOUNTAIN STATE

JUSTICE, Charleston, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant G. Russell Rollyson, Jr. appeals the district court's order denying his motion for summary judgment on the basis that he is entitled to qualified immunity as to the 42 U.S.C. § 1983 (2012) due process claim filed by Jeffrey and Sherrie O'Neal ("Plaintiffs"). For the following reasons, we affirm the district court's judgment.[1]

"We review qualified immunity determinations *de novo*." *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018). Qualified immunity—an affirmative defense to liability under § 1983—"'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted)). "To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." *Id.* Applied properly, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

Rollyson challenges the district court's finding that, although "[u]nder West Virginia law, the purchaser of a tax-delinquent property is responsible for conducting the

---

[1] Because the district court did not find that any genuine issues of fact remain unresolved with respect to Rollyson's qualified-immunity defense and neither Rollyson nor Plaintiffs dispute any controlling facts, we have jurisdiction to hear Rollyson's appeal. *See Yates v. Terry*, 817 F.3d 877, 882 (4th Cir. 2016).

title search and obtaining the names and addresses to which notice should be sent[,] . . . Rollyson . . . is responsible for serving the notice, and, ultimately approving the tax deed." (J.A. 412).[2] He asserts that no court has interpreted the West Virginia statutory scheme as placing the duty to provide constitutionally sufficient notice on his office. However, Rollyson does not dispute that he never informed the purchaser that the notices sent to the designated post office box were returned or that he failed to send notice addressed to "Occupant" as required by the statute. Rollyson further does not dispute that, knowing that the attempted notices were unsuccessfully sent, he transferred the Property deed to the purchaser anyway. Accordingly, and even assuming that the statutory scheme places the burden of ensuring constitutionally sufficient notice on the purchaser as Rollyson suggests, Rollyson fails to demonstrate how his transfer of the deed to the purchaser, despite Rollyson's knowledge that the attempted notices were returned, did not violate the O'Neals' constitutional rights, clearly established in *Jones v. Flowers*, 547 U.S. 220 (2006), and *Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005).

Rollyson further argues that Plaintiffs and their daughter had specific knowledge of the tax deficiency and the impending tax sale and that this differentiates the present case from the facts of *Jones* and *Plemons* such that their holdings do not amount to "clearly established law" applicable to his duties in this case. Indeed, it is undisputed that the O'Neals were aware prior to the sale that the Property was in delinquency and, if not

---

[2] "J.A." refers to the electronic copy of the joint appendix filed by the parties in this appeal.

4

redeemed, could be sold at a tax sale. However, and as recognized by the district court, the present dispute concerns the notice required under W. Va. Code Ann. §§ 11A-3-52 to -55 (LexisNexis 2017)—that is, the notice indicating that the Property had been sold and explaining the steps needed to redeem the property in order to avoid transfer of the tax deed to the purchaser. Even assuming that Plaintiffs' having actual notice would affect the applicability of *Jones* or *Plemons*, Rollyson does not contend—nor does the record establish—that Plaintiffs were aware that the Property was sold to the purchaser, that they could nonetheless redeem the Property to avoid transfer of the deed to the purchaser, or the price, deadline, or process by which to do so. Accordingly, Rollyson has failed to demonstrate any actual knowledge on the part of the O'Neals or their daughter that would make the facts of this case distinguishable from *Jones* or *Plemons*.

Finally, Rollyson contends that, if he had a duty to issue the challenged tax deed, but did so in violation of the notice requirements, then he acted in an unauthorized manner under the *Parratt*/*Hudson*[3] doctrine. However, we have specifically held that "where . . . state employees . . . have broad authority to effect deprivations, as well as the duty to provide predeprivation procedural safeguards, the *Parratt*/*Hudson* doctrine is inapplicable." *Bogart v. Chapell*, 396 F.3d 548, 563 (4th Cir. 2005). Indeed, as recognized in *Hudson* itself, "[w]hether an individual employee himself is able to foresee a deprivation is simply of no consequence[;] [t]he controlling inquiry is solely whether

---

[3] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330 (1986).

5

the state is in a position to provide for predeprivation process." *Hudson*, 468 U.S. at 534. Rollyson makes no attempt to argue that the State was not in a position to provide for a predeprivation process. He further does not contest the district court's conclusion that he easily could have provided for the requisite predeprivation process by taking reasonable efforts to provide the O'Neals notice of the sale. "The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply impracticable since the state cannot know when such deprivations will occur." *Id.* at 533 (internal quotation marks omitted). Considering that the State delegated to him the power and authority both to deprive the O'Neals of their property rights and to provide for predeprivation process, Rollyson has failed to establish that his conduct was "random and unauthorized" under *Parratt*, 451 U.S. at 541, such that predeprivation procedures were impracticable.

It is undisputed that Rollyson was aware that the notices he sent to the post office box provided by the purchaser were returned as undeliverable and/or unclaimed. It is also undisputed that Rollyson failed to attempt any other reasonably available measures to provide notice before issuing the tax deed. Because Rollyson's obligation, pursuant to the Fourteenth Amendment, to take such measures was established, at the latest, in 2006 by the Supreme Court in *Jones*, we conclude that the district court did not err in finding that Rollyson's actions violated the O'Neals' clearly established Fourteenth Amendment due process rights.

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*